**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ASHLEY E.,

                        Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,           No. 6:22-CV-299
                                         (GTS/CFH)

                        Defendant.

---

**APPEARANCES:**                      **OF COUNSEL:**

Ashley E.
Plaintiff pro <u>se</u>

Social Security Administration          MOLLY CARTER, ESQ.
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Ashley E.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her applications for disability insurance and supplemental security income

benefits. <u>See</u> Dkt. No. 1 ("Compl.").  Plaintiff moves for reversal and remand of the

Commissioner's decision. <u>See</u> Dkt. No. 21.  The Commissioner moves for judgment on

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

the pleadings. See Dkt. No. 19. For the following reasons, it is recommended that plaintiff's motion be denied, the Commissioner's motion be granted, and the Commissioner's decision be affirmed.

# I. Background

On September 27, 2019, plaintiff filed Title II and Title XIV applications for disability insurance and supplemental security income benefits. See T. at 14, 151-63.[3] Plaintiff alleged a disability onset date of April 30, 2018. See id. at 151, 153. The Social Security Administration ("SSA") denied plaintiff's claim on January 16, 2020. See id. at 50-51. Plaintiff sought reconsideration, see id. at 101, and her claims were again denied on March 11, 2020. See id. at 107. Plaintiff requested a hearing, see id. at 111, and a hearing was held on July 24, 2020, before Administrative Law Judge ("ALJ") David Romeo. See id. at 28-49. The ALJ issued an unfavorable decision on September 4, 2020. See id. at 14-23. The Appeals Council denied plaintiff's request for review on January 10, 2022. See id. at 4-8. Plaintiff sought an extension of time to file a civil action, which was granted. See id. at 1-3. Plaintiff timely commenced this action on March 30, 2022. See Compl.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 14. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

4

significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467).

**III. The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff met the insured status requirement through September 30, 2022, and had "not

5

engaged in substantial gainful activity since April 30, 2018, the alleged onset date."  T.

at 17.  At step two, the ALJ found that plaintiff had "the following severe impairments:

irritable bowel syndrome [("IBS")], asthma, and tobacco dependence[.]"  Id.  At step

three, the ALJ determined that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 18.  Before reaching step four,

the ALJ concluded that plaintiff retained the residual functional capacity ("RFC")

> to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b),
> except she should have no concentrated exposure to respiratory irritants.
> [Plaintiff] can tolerate occasional exposure to weather, extreme
> heat, extreme cold, wetness, humidity, vibration, and atmospheric
> conditions.  She also requires ready access to a restroom.  However, her
> need to use the restroom can be accommodated by the 15-minute
> morning and afternoon breaks, the 30-minute lunch period, and two
> additional six-minute bathroom breaks throughout the workday.

Id. at 18-19.  At step four, the ALJ determined that plaintiff was "capable of performing

past relevant work as a food service worker.  This work does not require the

performance of work-related activities precluded by [plaintiff's] residual functional

capacity[.]"  Id. at 22.  Thus, the ALJ concluded that plaintiff had "not been under a

disability, as defined in the Social Security Act, from April 30, 2018, through" September

4, 2020, the date of the ALJ's decision.  Id.


**IV. Discussion**

Plaintiff argues that substantial evidence does not support the ALJ's decision

because her "medical records stat[e] otherwise from [her] Primary Doctor as well as

[her] Gastrointestinal Doctor[.]"  Dkt. No. 21 at 1.[4]  Plaintiff asserts that her "major issues include IBS-chronic diarrhea/abdominal pain, nausea, acid reflux, stomach inflammation, Colitis, Anxiety, Depression, [and] shortness of breath."  Id.  She tried multiple medications for her IBS, but nothing has helped and she "ended up testing positive for C-Diff[.]"  Id.  Plaintiff explains that she developed precancerous polyps, a change in her diet has not helped, she cannot take Nonsteroidal anti-inflammatory drugs or NSAIDS, her Colitis results in frequent flareups, she cannot control when she has to use the restroom, she gets tired easily and has low energy, and she gets short of breath walking up and down stairs.  See id. at 1-2.

Plaintiff states that she was bedridden for a few months because of dizziness and tingling sensations in her body which a neurologist attributed to anxiety or panic attacks.  See Dkt. No. 21 at 2.  She gets nervous to go anywhere because of her IBS, but anxiety medication "helps some."  Id.  She "started homeschooling [her] three children now because it was too much for [her] to take them to the bus stop to wait for the bus or to drive them to and from school with having to worry all the time about going to the bathroom."  Id.  Plaintiff "carr[ies] toilet paper and a bucket in [her] Van now even with short trips out of the house.  It is uncontrollable so when [she has] to go, [she has] to go then."  Id.  She contends that there is "no way [she] could work like this even with a job that has a set lunch break and two set 15 minutes breaks because [she has] no control to hold it in at a certain time."  Id.  Plaintiff's "need to use the restroom would not be accommodated by normal breaks and two additional six-minute breaks.  It is unpredictable.  [She] would have to walk off the job in the middle of helping a customer

---

[4] Citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

or patient." Id.  Plaintiff asserts that she has trouble concentrating and worries about

going places because of her "stomach acting up and being afraid to eat anything." Id.

She explains that she previously denied mental health issues because she did not "like

talking about it to many people." Id.

The Commissioner submitted her brief before plaintiff and addressed every step

of the ALJ's decision.  See generally Dkt. No. 19.  The Commissioner argues that the

ALJ's decision is supported by substantial evidence.  See generally id.

It is well settled that a plaintiff bears the burden of establishing disability.  See

Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999); Carroll v. Sec'y of Health and Human

Servs., 705 F.2d 638, 642 (2d Cir. 1983).  Here, although submitted after the

Commissioner, plaintiff filed a brief challenging the evidence that the Commissioner

identified as "substantial." Dkt. No. 21 at 1.  Plaintiff's two-page brief does not specify

precisely what steps of the sequential evaluation she is challenging.  See id. at 1-2.

Out of deference to plaintiff's pro se status, the undersigned "will 'examine[ ] the record

to determine whether the ALJ applied the correct legal standards and reached a

decision based on substantial evidence.'" Dezarea W. v. Comm'r of Soc. Sec., No.

6:21-CV-01138 (MAD/TWD), 2023 WL 1960528, at *5 (N.D.N.Y. Feb. 13, 2023) (citation

omitted), report and recommendation adopted, 2023 WL 2552452 (N.D.N.Y. Mar. 17,

2023).[5]

### A.  Plaintiff's Self-Representation

---

[5] Unpublished cases that have been relied on in this Report-Recommended and Order have been
provided to pro se plaintiff.  In light of the number of unpublished cases that have been cited, the
undersigned has not provided plaintiff with copies of any subsequent history of each of the cited cases,
unless that subsequent history is independently relied on.

Plaintiff is presently proceeding pro se, as she did before the ALJ and the Appeals Council.  See T. at 3, 30-31, 148-49.  She contends that Legal Aid was helping her but "[t]hey were not there when [she] needed them.  [She] could not get a hold of [her] assigned worker, but left many messages regarding the matter . . . ."  Dkt. No. 21 at 1.  Plaintiff explained that her attorney "had contacted [her] after the phone hearing already happened, and so [she] decided that they were not of much help.  This is why [she has] no representation, but instead representing [her]self."  Id.  The Commissioner argues that plaintiff validly waived her right to counsel.  See Dkt. No. 19 at 3-5.

"Although a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to be represented should she choose to obtain counsel.  If properly informed of this right, a claimant may waive it."  Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705); see also 20 C.F.R. § 416.1505.  To properly inform a claimant of this right, "the Commissioner of Social Security must notify [the] claimant in writing of (1) her options for obtaining [an] attorney[ ] to represent [her] at her hearing, and (2) the availability . . . of . . . organizations which provide legal services free of charge to qualifying claimants."  Krystal R. v. Comm'r of Soc. Sec., No. 8:20-CV-0513 (ML), 2021 WL 3287776, at *5 (N.D.N.Y. Aug. 2, 2021) (alterations in original) (quotation marks omitted) (quoting 42 U.S.C. §§ 406(c), 1383(d)(2)(D)).

Following plaintiff's request for a hearing, the SSA sent her a letter detailing her right to representation.  See T. at 114.  The SSA also attached a document explaining her right to representation and listing organizations that provide free legal services.  See id. at 117-24.  Once plaintiff's hearing was scheduled, the SSA attached another copy of

the form explaining her right to counsel to the hearing notice.  See id. at 134-40.  At the

start of the administrative hearing, ALJ Romeo explained,

> as you are unrepresented, I must ensure that you understand your rights
> to representation.  So you're entitled to be represented at your hearing by
> either an attorney or a non-attorney representative and they could do
> things such as explain medical terms, gather any necessary evidence in
> your case, prepare you for testimony or bring any other issues to the
> Court's attention.
>
> They can only charge or collect a fee if it's approved by Social Security.
> Some people qualify for free representation through Legal Aid, depending
> on their financial circumstances.  So that leaves you with respect to
> representation.  I can give you a postponement if you want to try and get
> representation.  If you don't wish to be represented, then you can waive
> your rights to representation and we'll move on.  So do you understand
> your rights to representation?

Id. at 30-31.  Plaintiff responded, "Yes."  Id. at 31.  The ALJ asked if plaintiff would "like

a postponement to try and get a representative or" if she would "like to waive [her] rights

to representation[.]"  Id.  Plaintiff said, "I would like to waive my rights to representation,

please."  Id.

Plaintiff does not argue that she was improperly denied the right to counsel.  See

Dkt. No. 21 at 1-2.  As the SSA informed plaintiff of her rights at all stages of the

administrative process and plaintiff waived that right, the undersigned finds no error.

See, e.g., Sindoni v. Colvin, No. 3:14-CV-0633 (GTS), 2015 WL 3901955, at *4

(N.D.N.Y. June 25, 2015).

## B.  Additional Evidence Submitted to the Court

Plaintiff attaches numerous medical records to her two-page brief.  See Dkt. No.

21 at 3-66.  As an initial matter, the relevant time period for plaintiff's applications is

from April 30, 2018, her alleged onset date, to September 4, 2020, the date of the ALJ's

decision.  See T. at 23, 151, 153; see also 20 C.F.R. §§ 404.130, 404.315(a), 416.330,

416.335; Jaquish v. Comm'r of Soc. Sec., No. 8:16-CV-0399 (GTS), 2017 WL 3917019, at *6 (N.D.N.Y. Sept. 6, 2017) ("The relevant period for the Title II claim spans between the . . . alleged onset date to the date last insured . . ., while the relevant period of consideration for the Title XVI application would extend years later to the date of the ALJ's decision . . . .").

Some of the records plaintiff submits are already a part of the administrative transcript.  See id. at 6-7, 33-35, 51-55, 57, 59, 60-65; see also T. at 562, 865-70, 887, 890-96, 961, 969-70, 974-76.  Other records are dated during the relevant period but are not in the administrative transcript.  See Dkt. No. 21 at 9, 41-42, 50-51, 56, 58.  Still others are dated after the relevant period and are not in the administrative transcript. See Dkt. No. 21 at 8, 10-32, 36-40, 43-49, 66.

Insofar as plaintiff attaches records to her brief which are already a part of the administrative transcript, those records will be considered in conjunction with the undersigned's analysis of whether the ALJ's determination is supported by substantial evidence.  See Clark v. Comm'r of Soc. Sec., No. 1:14-CV-1349 (TJM/ATB), 2015 WL 10475327, at *8 (N.D.N.Y. Oct. 21, 2015) ("The rest of [the] plaintiff's submission consists of documents that are already in the record . . . .  The documents that are already in the record have been considered in this court's analysis."), report and recommendation adopted, 2016 WL 1020848 (N.D.N.Y. Mar. 14, 2016).  As to the records plaintiff presents which do not appear in the administrative transcript, "[a] case may be remanded . . . for reconsideration based on new evidence first submitted to the district court if the plaintiff [] show[s] that the new evidence 'is material and that there

11

[wa]s good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Id. (quoting 42 U.S.C. § 405(g)).

> To carry this burden, a plaintiff must show that "(1) the proffered evidence is new and not merely cumulative of what is already in the record; (2) the proffered evidence is material, meaning that it is (a) relevant to his condition during the time period for which benefits were denied; (b) probative; and (c) reasonably likely to have influenced the Commissioner to decide his application differently; and (3) good cause exists for his failure to present the evidence earlier."

Id. (citation omitted); see also Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988).

## 1. Evidence Dated During the Relevant Time Period

Plaintiff submits records that span from February 2018 to August 2020. See Dkt. No. 21 at 9, 41-42, 50, 56, 58. This evidence is cumulative of the evidence in the administrative transcript and plaintiff has not shown good cause for the failure to submit it in a prior proceeding. Thus, remand is not warranted for consideration of this evidence.

First, plaintiff does not explain why she failed to provide the records to the ALJ or Appeals Council despite them being in existence at the time of administrative review. See generally Dkt. No. 21; see also Doner v. Comm'r of Soc. Sec., No. 8:16-CV-0883 (CFH), 2017 WL 3172419, at *4 (N.D.N.Y. July 25, 2017) ("[A] remand is not warranted for consideration of the additional evidence presented for the first time to this Court because [the p]laintiff has not shown that there was good cause for failing to submit these records to either the ALJ or the Appeals Council."); Barnaby v. Comm'r of Soc. Sec., No. 8:17-CV-0399 (GTS/WBC), 2018 WL 4522057, at *12 (N.D.N.Y. June 6, 2018) ("The courts in this jurisdiction have clearly explained that the burden is on the plaintiff to show he [or she] meets the three-prong new and material evidence standard

under the sixth sentence of § 405(g)."), <u>report and recommendation adopted sub nom.</u> <u>Timothy B. v. Comm'r of Soc. Sec.</u>, 2018 WL 3853999 (N.D.N.Y. Aug. 14, 2018), <u>aff'd</u> <u>sub nom. Barnaby v. Berryhill</u>, 773 F. App'x 642 (2d Cir. 2019) (summary order).

Second, the records are cumulative and unlikely to alter the ALJ's decision. Plaintiff presents discharge instructions from St. Elizabeth Medical Center following plaintiff's emergency visit for nausea, vomiting, and dizziness. <u>See</u> Dkt. No. 21 at 41-42. The administrative record indicates that certain medication made plaintiff dizzy, <u>see</u> T. at 1126, but she usually denied dizziness, nausea, or vomiting. <u>See</u> T. at 464, 614, 620, 636, 774, 788, 1041, 1169. Plaintiff occasionally complained of nausea, but the ALJ specifically cited records which addressed plaintiff's nausea. <u>See id.</u> at 21, 942, 945, 1131. The discharge instructions do not add any information concerning the severity or limiting effects from plaintiff's dizziness, nausea, or vomiting. <u>See</u> Dkt. No. 21 at 41-42. Thus, they would not alter the ALJ's decision.

Plaintiff also presents a record discussing diarrhea, generally, and "Test Requisition[s]" for abdominal pain and bloating. <u>Id.</u> at 50, 56, 58. The administrative transcript contains a plethora of records addressing diarrhea, abdominal pain, and bloating. <u>See</u> T. at 466, 539, 614, 641, 664, 680, 774, 870, 887, 914, 961, 1024, 1034, 1041, 1084, 1097, 1106, 1117. The ALJ explicitly cited many of these records. <u>See id.</u> at 21. Even if he did not cite all of the records concerning plaintiff's diarrhea or abdominal pain, an ALJ is not required to recite every piece of evidence from the administrative record. <u>See</u> <u>Brault</u>, 683 F.3d at 448 (citations and quotation marks omitted) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence

does not indicate that such evidence was not considered.").  Similarly, plaintiff submits a record which shows that during a follow-up visit, "Depression with anxiety[]" was "addressed[.]"  Dkt. No. 21 at 9.  The record does not indicate plaintiff's symptomology, any examination results, or objective conclusions.  See id.  ALJ Romeo discussed plaintiff's depression and "history of anxiety."  T. at 17-18, 21 (citations omitted).

Plaintiff has not demonstrated how the records would likely change the ALJ's decision as they indicate that plaintiff had diarrhea, abdominal pain, bloating, depression, and anxiety—all things that the ALJ considered.  See Dkt. No. 21 at 1-2; see also Boffa v. Kijakazi, No. 20-CV-2632 (EK), 2023 WL 4545187, at *9 (E.D.N.Y. July 15, 2023) ("[W]hile this report contained [the] high-level assessment of [the plaintiff's] impairments, a significant portion of the medical evidence underlying that assessment was already extensively documented at the time of the ALJ's decision. [The] report therefore would not have meaningfully changed the record before the ALJ."); Eileen M. v. Comm'r of Soc. Sec., No. 21-CV-0740, 2023 WL 2043828, at *2 (W.D.N.Y. Feb. 16, 2023) (finding "no error in the Appeals Council's conclusion that the post-decision evidence would not have changed the outcome of the decision. . . .  [T]he post-decision evidence reflects degenerative disc disease and shoulder disorder, with mild diagnostic findings.  As such, it is wholly consistent with, and cumulative of, the medical evidence of record which the ALJ considered . . . .").  As plaintiff has not established good cause for her failure to submit the records from the relevant period and they are cumulative of the records in the administrative transcript and unlikely to change the ALJ's decision, they do not warrant remand.  See 42 U.S.C. § 405(g).

## 2.  Evidence Dated After the Relevant Time Period

The ALJ's decision is dated September 4, 2020.  See T. at 23.  The Appeals

Council decision is dated January 10, 2022.  See id. at 4.  Plaintiff submits medical

records dated from October 27, 2020, to July 28, 2022.  See Dkt. No. 21 at 3-5, 8, 10-

19, 21-32, 36-40, 43-49, 66.  These records are new as they do not appear in the

administrative transcript.  See Milano v. Apfel, 98 F. Supp. 2d 209, 215 (D. Conn. 2000)

(citation omitted) ("'New' evidence is simply that evidence which has not been

considered previously during the administrative process.").  Insofar as some of the

records are dated after the Appeals Council's decision, there is good cause for plaintiff's

failure to submit them because they did not exist at the time of administrative review.

See Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) ("Because the new evidence . . .

did not exist at the time of the ALJ's hearing, there is no question that the evidence is

'new' and that 'good cause' existed for her failure to submit this evidence to the ALJ.").

To the extent some of the records are from after the ALJ's decision but before

the Appeals Council's decision, plaintiff does not explain why she failed to submit them

earlier.  See Dkt. No. 21 at 1-2; see also Doner, 2017 WL 3172419, at *4; Lisa v. Sec'y

of Dep't of Health & Hum. Servs. of U.S., 940 F.2d 40, 45 (2d Cir. 1991) ("To show good

cause, [the plaintiff] must adequately explain her failure to incorporate the proffered

evidence into the administrative record.").  Although plaintiff does not contend that her

pro se status impacted her ability to gather medical records, see Dkt. No. 21 at 1-2, "[a]

claimant's pro se status can establish good cause for the purposes of remand."  Rose v.

Comm'r of Soc. Sec., 202 F. Supp. 3d 231, 241 (E.D.N.Y. 2016) (citation omitted); see

also Hupp v. Comm'r, No. 17-CV-692, 2018 WL 6809432, at *3 (W.D.N.Y. Dec. 27,

2018) ("[The] plaintiff proceeding pro se provides good cause for not seeking admission of additional evidence that she might not have been aware of to seek.").

Regardless, remand is not warranted for consideration of the records because they do not relate to the relevant time period and would not likely change the ALJ's decision.  See Clark, 2015 WL 10475327, at *8 ("[T]he proffered evidence is material, meaning that it is (a) relevant to his condition during the time period for which benefits were denied; (b) probative; and (c) reasonably likely to have influenced the Commissioner to decide his application differently[.]").

The majority of the records dated after the ALJ's decision are treatment records from follow-up medical visits.  See Dkt. No. 21 at 8, 10, 13-40, 43-47, 66.  The records indicate the "issues" that were "addressed" during the follow-up visits such as chest pain, diarrhea, IBS, depression, scoliosis, and gastrointestinal reflux.  See id. at 8, 10, 13-40, 43-47, 66.  The records do not indicate plaintiff's subjective symptomology during those visits, any examination results, or any conclusions concerning the conditions. See id. at 8, 10, 13-40, 43-47, 66.

There is no indication that the records relate to the relevant time period.  See Clark v. Saul, 444 F. Supp. 3d 607, 621 (S.D.N.Y. 2020) ("[F]or[] records to provide substantial evidence of a disability during the relevant time period, the records must actually shed light on [the plaintiff's] condition during that period.").  A few of the records indicate that plaintiff was suffering from conditions that do not appear in the administrative record such as scoliosis and chest pain.  See Dkt. No. 21 at 13, 23-24. Evidence of new conditions after the relevant period does not warrant remand.  See Campbell v. Comm'r of Soc. Sec., No. 15-CV-2773 (AJP), 2016 WL 6462144, at *12

(S.D.N.Y. Nov. 1, 2016) (citation omitted) (alteration in original) ("[C]onditions that developed subsequent to the ALJ's denial of benefits are not relevant or material to the ALJ's determination."). Further, a reference to a medical condition or a diagnosis does not establish functional limitations. See Crysler v. Astrue, 563 F. Supp. 2d 418, 440 (N.D.N.Y. 2008) (footnote omitted) ("[A] diagnosis does not translate into an automatic finding of disability; it is not the presence of such a medical condition, but rather its limitations, which inform the question of whether or not a plaintiff is under a disability."). The records indicate only that plaintiff and her provider discussed scoliosis and chest pain, with nothing more. They provide no information that the ALJ could rely on to determine whether those conditions impacted plaintiff's life, and if so, to what degree. See Dkt. No. 21 at 13, 23-24.

Most of the conditions listed in the new records were explicitly discussed by the ALJ or contained in the records cited by the ALJ: depression, IBS, gastrointestinal reflux, and diarrhea. See T. at 17-22, 465, 568, 614-15, 625, 636, 641, 650-51, 936, 1103, 1131, 1159, 1169 ; see also Dkt. No. 21 at 8, 10, 14-22, 24-40, 43-47, 66; Hopson v. Comm'r of Soc. Sec., 579 F. Supp. 3d 501, 519 (S.D.N.Y. 2022) (affirming the Appeals Council's declination to consider evidence because "[t]he new records . . . did not add any information that was not already before the ALJ . . . and thus could not be reasonably expected to change the ALJ's decision."); Hamilton v. Comm'r of Soc. Sec., No. 18-CV-1509 (HBS), 2020 WL 4283895, at *4 (W.D.N.Y. July 27, 2020) (concluding that remand was not warranted for the consideration of new evidence because "there is simply nothing in the proposed new records that the ALJ would not have seen or considered from the prior records or from testimony at the hearing."). Not

17

only do plaintiff's conditions—depression, IBS, gastrointestinal reflux, and diarrhea—appear throughout the administrative record, but the new records do not contain any functional limitations or examination results that the ALJ could rely on to determine plaintiff's functioning.  See Dkt. No. 21 at 8, 10, 14-22, 24-40, 43-47, 66.  As such, there is no reasonable probability that the records would change the ALJ's decision.  See McMorris v. Comm'r of Soc. Sec., No. 6:18-CV-6118 (DB), 2019 WL 2897123, at *8 (W.D.N.Y. June 26, 2019) (affirming rejection of new evidence because it "did not contain any new treatment, objective findings, or subjective complaints and were largely based on evidence already in the record . . . .").

Plaintiff also submits three medical opinions dated after the ALJ's decision.  See Dkt. No. 21 at 3-4, 11-12, 48-49.  First, LeShan Burlingham, FNPC, authored an opinion on August 12, 2021.  See id. at 12.  He listed plaintiff's depression and IBS as her medical conditions and noted that she was moderately limited in pushing, pulling, bending, climbing stairs, and maintaining attention and concentration.  See id. at 11-12.  Otherwise, there was no evidence of limitations.  See id. at 12.  He wrote, "depression + irritable bowel are lifetime conditions and will wax + wane throughout her lifetime. During a flare-up will need leave from employment."  Id.  ANP Michelle L. Chambrone authored two opinions in April and July 2022.  See Dkt. No. 21 at 4, 49.  She listed plaintiff's medical conditions as depression, IBS, chronic diarrhea, and chronic abdominal pain.  See id. at 3, 48.  ANP Chambrone indicated that plaintiff was moderately limited in her ability to walk, stand, sit, lift, push, pull, bend, climb, maintain attention and concentration, maintain socially appropriate behavior, and function in a

work setting at a consistent pace.  See id. at 4, 49.  She wrote that "due to chronic

medical problems + depression, anxiety[,] hard to maintain set schedule."  Id. at 4, 49.

First, there is no indication in any of the opinions that they were intended to relate

back to any time between April 30, 2018, and September 4, 2020.  See Bridget P. v.

Comm'r of Soc. Sec., No. 3:21-CV-654 (CFH), 2023 WL 2402782, at *5 (N.D.N.Y. Mar.

8, 2023) (collecting cases) ("Courts have determined that the Appeals Council did not

err in concluding that evidence did not relate to the relevant time period where the

evidence was created after the relevant date, it did not explicitly refer to the relevant

time period, the author of the evidence did not have an established treatment

relationship with the plaintiff during the relevant time period, and/or the opinion did not

demonstrate greater limitations than the ALJ found.").  The opinions state that plaintiff's

initial diagnoses were all before September 4, 2020.  See Dkt. No. 21 at 3, 11, 48.  The

opinions asked, "does this individual have severe impairment(s) which has lasted, or is

expected to last at least 12 months?"  Id. at 4, 12, 49.  NP Burlingham did not answer

the question.  See id. at 12.  ANP Chambrone wrote, "Irritable bowel, diarrhea – lifetime

issues; depression – wax + wane throughout life."  Id. at 4, 49.  None of the opinions

explicitly state that they were meant to relate back to the relevant period.  See id. at 4,

12, 49.

NP Burlingham and ANP Chambrone had established treatment relationships

with plaintiff and their new opinions concern conditions that existed during the relevant

period.  See Hill v. Berryhill, No. 6:17-CV-6770 (MAT), 2018 WL 4927126, at *4

(W.D.N.Y. Oct. 11, 2018) (citation omitted) ("There is nothing in the record to suggest

that [the] opinion was based on new and unrelated conditions that [the p]laintiff did not

already have prior to the ALJ's decision.  Rather, [the opinion] noted that [the p]laintiff continued to suffer from depression, anxiety, and other cognitive defects causing her to have difficulty in completing daily activities.  Moreover, [the] opinion was only rendered two months after the ALJ's opinion, and [the p]laintiff presented to [the provider] with the same complaints she had during the disability period.  Thus, [the] opinion is relevant to the period as issue."); Rayburn v. Colvin, No. 6:14-CV-06500 (MAT), 2015 WL 8482780, at *3 (W.D.N.Y. Dec. 9, 2015) (explaining that the provider "had established a treatment relationship with [the] plaintiff long before the ALJ's decision, [which was] a further indication that his opinion on [the] plaintiff's overall condition related to the relevant time period."); Pferrer-Tuttle v. Colvin, No. 1:14-CV-00727 (MAT), 2015 WL 5773524, at *6 (W.D.N.Y. Sept. 30, 2015) ("Contrary to the Appeals Council's finding, however, [the] report was relevant to the applicable time period.  The report does not specifically state any dates of applicability, but [the] plaintiff had a longstanding treatment relationship with [the author] which predated the ALJ's decision and which was apparent from the administrative record.").

In Hill, Rayburn, and Pferrer-Tuttle, although the new medical opinions were from providers who had an established treatment relationship with the plaintiffs, the providers had not previously submitted medical opinions during the relevant period.  See Hill, 2018 WL 4927126, at *4; Rayburn, 2015 WL 8482780, at *3; Pferrer-Tuttle, 2015 WL 5773524, at *6.  Here, NP Burlingham and ANP Chambrone provided medical opinions during the relevant period which the ALJ discussed.  See T. at 20-21, 822-23, 829-30, 850-53, 969-70.  Specifically, in 2018 and 2019, ANP Chambrone opined that plaintiff had no evidence of any limitations.  Id. at 823, 830.  In 2019, NP Burlingham opined that

20

plaintiff was "unable to perform any of her job functions due to abdominal pain, chronic diarrhea, [and] nausea." Id. at 851. NP Burlingham wrote, "flare ups of diarrhea, cramping pain + nausea will prevent her from focusing and completing job duties." Id. at 852. In 2020, NP Burlingham opined that plaintiff had moderate limitations in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, climbing stairs, maintaining attention and concentration, maintain socially appropriate behavior, and functioning in a work setting at a consistent pace. See id. at 970. The ALJ discussed all four opinions. See id. at 20-21.

Even if the new opinions could be said to relate back to the relevant period because of the providers' established treatment relationships of plaintiff's conditions, there is no reasonable probability that they would change the ALJ's decision. As to NP Burlingham's new 2021 opinion, it indicated that plaintiff had less limitations than the 2020 opinion. Compare Dkt. No. 21 at 12, with T. at 970. Plaintiff fails to show how an opinion with less limitations would change the ALJ's decision. See Dkt. No. 21 at 1-2.

Insofar as ANP Chambrone's 2022 opinions indicate a worsening of plaintiff's limitations from ANP Chambrone's 2018 and 2019 opinions in the Administrative Transcript, "evidence of a deteriorating condition is not material if it is documented after the ALJ renders his or her decision." Barnes v. Comm'r of Soc. Sec., No. 5:15-CV-740 (GLS/ATB), 2016 WL 4734391, at *7 (N.D.N.Y. July 11, 2016) (citation omitted) (concluding that "[t]o the extent that [the] plaintiff's condition became worse after the relevant time period, the new evidence would not be material or probative of plaintiff's condition during the time period in question."), report and recommendation adopted, 2016 WL 4734648 (N.D.N.Y. Sept. 8, 2016); see also Collins v. Comm'r of Soc. Sec.,

960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) (concluding that remand to consider certain evidence was inappropriate because "[r]ather than shedding light on [the plaintiff's] condition during the relevant time period, the new evidence suggests at most that his condition worsened after the ALJ's decision.").

Additionally, the new opinions do not "suggest[] that, during the relevant time period, [plaintiff's] condition was more serious than previously thought." Carrera v. Colvin, No. 1:13-CV-1414 (GLS/ESH), 2015 WL 1126014, at *10 (N.D.N.Y. Mar. 12, 2015) (concluding that the new evidence could only show a worsening in the plaintiff's condition or clarify a pre-hearing disability in that it was worse than previously thought). First, as explained, there is no indication that the opinions are meant to relate back to the relevant period or negate the opinions that the providers submitted during the relevant period. Second, ANP Chambrone's 2022 opinions are identical to NP Burlingham's 2020 opinion. See Dkt. No. 21 at 4, 49; see also T. at 970. The ALJ explicitly discussed NP Burlingham's opinions. See Dkt. No. 21; see also Quintana v. Berryhill, No. 1:18-CV-00561 (KHP), 2019 WL 1254663, at *15 (S.D.N.Y. Mar. 19, 2019) ("Courts will typically remand a social security action for additional proceedings where new evidence shows that a claimant suffered from impairments during the relevant time period that were substantially more severe than previously diagnosed. On the other hand, courts will not remand where the new evidence describes symptoms and conditions already contained in the record, relies on the same information previously considered by the ALJ or fails to show that the claimant's impairments were more severe than previously diagnosed during the relevant time period."); Jazz G. v. Comm'r of Soc. Sec., No. 6:19-CV-06340 (EAW), 2021 WL 568201, at *8 (W.D.N.Y. Feb. 16,

2021) ("[W]hile [the] February 11, 2019 opinion may be new in the sense that it did not exist at the time the ALJ issued his decision, the 2019 opinion is largely consistent with his earlier opinion and arguably cumulative, calling into question whether it can be considered probative or establish a reasonable possibility that Plaintiff's application would have been decided differently."). But see Patrick M. v. Saul, No. 3:18-CV-290 (ATB), 2019 WL 4071780, at *8 (N.D.N.Y. Aug. 28, 2019) (concluding that remand was necessary for consideration of medical opinions from "after the ALJ's decision" because the opinions contained "some critical differences" from the opinions in the record which, if given weight, could alter the ALJ's determination); Lesterhuis v. Colvin, 805 F.3d 83, 88-89 (2d Cir. 2015) (per curiam) (remanding for consideration of treating physician's opinion that the agency had not analyzed because the new medical opinion was supported by another medical opinion in the record and was not contrary to any other evidence in the record).

In discussing NP Burlingham's 2020 opinion and the moderate limitations in maintaining attention, concentration, socially appropriate behavior, and a consistent pace, the ALJ stated "that no other medical source has reported any work-related mental limitations[.]" T. at 18. That would not be the case if the ALJ also had NP Burlingham's 2021 and ANP Chambrone's 2022 opinions. NP Burlingham's 2021 opinion concurs in the moderate limitations in maintaining attention and concentration. See Dkt. No. 21 at 12. ANP Chambrone's 2022 opinions concur with all of the moderate limitations as set forth in NP Burlingham's 2020 opinion. See id. at 4, 49; see also T. at 970.

The ALJ determined  that the medical opinions in the record which opined that plaintiff had no mental limitations were "persuasive because they are consistent with [plaintiff's] aforementioned activities and abilities.  They are also supported by [plaintiff's] documented mental status exams, which have been essentially unremarkable throughout the period at issue[.]"  T. at 18.  The ALJ stated that NP Burlingham's moderate limitations "are not persuasive because they are inconsistent with the other medical opinions of record and unsupported by [plaintiff's] documented mental status exams[.]  They are also inconsistent with [plaintiff's] reported activities and abilities."  Id. at 21.

There is not a reasonable probability that the three new opinions would change this determination.  See Dkt. No. 21 at 4, 12, 49; see also T. at 970.  Although, if considered, there would be four total opinions reflecting moderate limitations in attention, concentration, pace, and social interactions, those four opinions remain inconsistent with the records which are "essentially unremarkable" and with the other medical opinions in the record.  T. at 18.

Neither NP Burlingham nor ANP Chambrone explain whether the moderate limitations in concentration, pace, and socially appropriate behavior are because of plaintiff's depression, anxiety, and/or bathroom-related limitations.  See Dkt. No. 21 at 4, 12, 49.  Insofar as they could be connected to plaintiff's anxiety and depression, plaintiff did not seek disbality benefits because of depression or anxiety.  See T. at 176.  Plaintiff did not testify to having work-related mental limitations, and she did not indicate any such limitations her Function Reports.  See id. at 30-49, 185-95.  She explicitly denied having problems paying attention, finishing what she starts, following

instructions, and getting along with others.  <u>See</u> T. at 191-92.  She did testify that she was taking depression medication, <u>see</u> T. at 44, and some records note major-depressive disorder and a dysphoric mood.  <u>See</u> <u>id.</u> at 389, 273-74, 294, 305-06, 314, 974, 1008-10, 1021, 1029, 1041-42, 1050, 1125.  Plaintiff complained that she had "1 month worsening depression and cites she has no break form her children ages 6y, 4y, 2yr, and this is overwhelming, makes her very sad, and cites no time for herself."  <u>Id.</u> 1041.

However, her examinations were normal, aside from a dysphoric mood, and she rarely complained of mental health related limitations.  <u>See</u> T. at 553, 569, 593, 601, 621, 630, 637-38, 641, 644-45, 651, 657, 661, 673, 680-81, 776, 908, 980, 985, 992, 1015, 1081, 1127, 1131-32, 1159.  Most of the medical opinions in the administrative transcript do not list depression as a medical condition.  <u>See</u> T. at 52-93, 820-21, 829, 858.  Even the records that include a notation concerning depression do not indicate any work-related limitations.  <u>See</u> <u>id.</u> at 974, 1009, 1021, 1030, 1041-42, 1050.  Plaintiff denied a decrease in concentration when exhibiting symptoms of depression and anxiety.  <u>See</u> <u>id.</u> at 1009, 1029-30, 1041.

The ALJ considered these records and concluded that moderate mental health limitations were inconsistent with the records and plaintiff's activities of daily living.  <u>See</u> T. at 18, 21.  Based on the record, the undersigned finds no reasonable probability that the new opinions would alter that conclusion.  <u>See</u> <u>Jessica v. Saul</u>, No. 5:19-CV-1427 (DEP), 2021 WL 797069, at *9-10 (N.D.N.Y. Mar. 2, 2021) (concluding that the "opinion does not show a reasonable probability of changing the ALJ's decision" because it did not contain substantive explanations, was internally inconsistent, was "inconsistent with

other evidence in the record[,]" and was inconsistent with the consultative examiner's opinion); Michael C. v. Comm'r of Soc. Sec., No. 1:18-CV-1115 (ATB), 2019 WL 7293683, at *5 (N.D.N.Y. Dec. 30, 2019) (citations omitted) ("The ALJ accorded little probative value to the January 2016 and May 2017 opinions of [the] treating source . . . who found very restrictive limitations similar to those identified by the other treating source opinions cited by [the p]laintiff.  It is unlikely that weighing similar opinions which pre-dated the amended AOD would have changed the ALJ's analysis or ultimate decision . . . .").

It is plausible that the new medical opinions' moderate limitations could be related to plaintiff's IBS and abdominal pain.  See Dkt. No. 21 at 3-4, 11-12, 48-49. That is precisely what NP Burlingham opined in 2019—that plaintiff was having nine bowel movements a day and her flare ups and pain would "prevent her from focusing and completing job duties."  T. at 851-52.

The ALJ concluded that plaintiff's own report and testimony were inconsistent with NP Burlingham's statement that plaintiff would be "prevent[ed] [] from focusing and completing job duties."  T. at 21.  Specifically, plaintiff testified that when she has "to go to the bathroom it's like very urgent.  [She has] to make sure there's a bathroom close by.  [She does not] really do anything if – you know, [she has] to make sure there's a bathroom, even when [she goes] grocery shopping."  Id. at 38.  She explained that she uses the bathroom "at least like six times" a day and "it's really bad in the mornings."  Id. at 40.  She stated that she does not always go to family functions because she is "worried that [she will] have to run to the bathroom and like [she] won't even be able to make it there."  Id. at 45.  Plaintiff noted in her Function Report that when she gets the

urge to use the restroom, she has to go right away because it is "uncontrollable." Id. at

187.  She indicated that she cannot finish what she starts and explained that this is

because she "ha[s] kids to take care of.  [She] can start the dishes, and they will need

something so [she] will help them and then finish the dishes after." Id. at 191.  She

explained that she gets her kids ready for school, takes them to the bus stop, cleans,

grocery shops, cooks, and throughout all of it, she has to go to the bathroom as random

times.  See id. at 185-86.  She wrote that she keeps toilet paper and a bucket in her car

in case she is driving for a while and needs to use the restroom.  See id. at 186.  She

states that she is in pain "all the time," but that the pain occurs "about once every two

weeks – varies." Id. at 192-93.  When asked, "[h]as the pain affected your daily

activities[,]" plaintiff wrong, "no, just sleeping sometimes.  It's hard to sleep with

heartburn/stomach pain.  Sometimes carrying heavy things can be a chore." Id. at 194.

At no point did plaintiff state that her need to use the restroom meant that she

could not focus or complete a task.  The ALJ considered all of the information plaintiff

provided and concluded that contrary to NP Burlingham's opinion and her need ot use

the restroom, plaintiff would be able to focus or complete a job.  See T. at 21; see also

Holli M. v. Comm'r of Soc. Sec., No. 1:20-CV-1525 (DB), 2022 WL 826981, at *6

(W.D.N.Y. Mar. 18, 2022) (concluding that the new opinion "does not undermine the

reasons articulated by the ALJ for finding Ms. Baker's earlier opinion not persuasive[]"

because the opinions "assessed similar limitations" and because "the ALJ cited other

reasons for finding [the earlier] opinion not persuasive" that were supported by the

records).

As the new opinions do not contain additional limitations that were not considered by the ALJ and it is clear from the ALJ's determination how he considered the moderate limitations, there is not a reasonable probability that the new opinions would change the outcome of the ALJ's decision.  See Lisa C. v. Kijakazi, No. 3:21-CV-0037 (ATB), 2022 WL 2105853, at *12 (N.D.N.Y. June 10, 2022) ("[The] July 2020 opinion tracks the similarly restrictive limitations opined in her opinion rendered approximately six months earlier, which . . . the ALJ explicitly considered and found unpersuasive. . . .  [The] July 2020 opinion fails to support her significant functional limitations with citations to the objective medical evidence, or otherwise substantive explanations, for the restrictive functional limitations opined.  The new evidence . . . was also inconsistent with other evidence in the record.").  But see Amanda L. C. v. Comm'r of Soc. Sec., No. 3:19-CV-0817 (GTS), 2020 WL 4783169, at *8 (N.D.N.Y. Aug. 18, 2020) ("It is not sufficiently clear from the ALJ's decision . . . whether anything in [the new] opinion would have altered the ALJ's findings; in particular, the ALJ found that [the p]laintiff's IBS-related needs could be accommodated with normal breaks, but he did not address how [the p]laintiff's narcolepsy might impact her need to take breaks throughout the workday, and no source made any opinion on that issue in the record before the ALJ.").

In sum, because the new treatment records and medical opinions do not relate to the relevant period and they are not material, remand is not warranted for consideration of the evidence.  See 42 U.S.C. § 405(g).

**C.  Whether the ALJ's Decision is Free from Legal Error and Supported by Substantial Evidence**

### 1. Severity Determination

#### a. ALJ's Decision

The ALJ determined that plaintiff's IBS, asthma, and tobacco dependence were severe impairments.  See T. at 17.  He explained that "[n]o other medical disorder mentioned in the record has been established as a 'severe' impairment that meets the 12-month duration requirement."  Id.

The ALJ identified evidence in the record reflecting a history of anxiety and a diagnosis for major depressive disorder.  See T. at 17 (citing T. at 438, 479, 521-22, 1042).  ALJ Romeo reviewed NP Burlingham's June 2020 opinion that plaintiff's "depression caused no limitations for understanding, remembering, or carrying out instructions; making simple decisions; interacting appropriately with others; or maintaining basic standards of personal hygiene and grooming[.]"  Id. (citing T. at 970). He also reiterated NP Burlingham's opined moderate limitations.  See id.  The ALJ concluded that the moderate limitations were unpersuasive because they were "inconsistent with [plaintiff's] allegations.  [Plaintiff] has not alleged any mental impairments or significant work-related mental limitations[.]  In fact, [plaintiff] did not even reference any mental impairments during her hearing, other than to report she was no longer taking Prozac[.]"  Id. (citations omitted).

The ALJ explained that plaintiff lived with three children, ages two, four, and six. See T. at 17 (citations omitted).  The ALJ also reiterated plaintiff's Function Report which indicated that she did not need help or reminders to take her medication or to tend to her personal needs, she had trouble remembering things and "was affected by stress or schedule changes," she did not have problems getting along with others, and

she could follow written and spoken instructions.  Id. (citing T. at 187, 190-92).  ALJ Romeo listed the activities plaintiff was capable of which included dressing and bathing three children, spending time with her children, taking them to appointments and school, preparing food, cleaning, sweeping, mopping, shopping, driving, handling money, visiting her father, caring for their cat, writing, reading, organizing, and watching television.  See T. at 18 (citations omitted).  Then ALJ also "note[d] that no other medical source has reported any work-related mental limitations[.]"  Id. (citing T. 52-93, 823, 830, 859).  He found these "other" "assessments persuasive because they are consistent with [plaintiff's] aforementioned activities and abilities.  They are also supported by [plaintiff's] documented mental status exams, which have been essentially unremarkable throughout the period at issue[.]"  Id. (citing T. at 553, 569, 601, 621, 630, 638, 641, 645, 651, 657, 661, 673, 681, 685, 776, 980, 985, 992, 1010, 1015, 1029-30, 1042, 1081, 1127, 1132, 1159).  Thus, ALJ Romeo concluded that plaintiff had "no more than 'mild' limitations" in any of the functional mental health areas and, therefore, her mental health impairments were not severe.  Id.

### b.  Analysis

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental abilities to perform basic work activities.  See  20 C.F.R. §§ 404.1520(c), 416.920(c)).  Basic work activities include walking; standing; sitting; lifting; carrying; pushing; pulling; reaching; handling; seeing; hearing; speaking; understanding, remembering, and carrying out simple instructions; using judgment; and responding appropriately to supervision, co-workers, and usual work situations.  See Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y.

2012) (citations omitted).  "Although the Second Circuit has held that this step is limited

to 'screen[ing] out de minimis claims,' the 'mere presence of a disease or impairment, or

establishing that a person has been diagnosed or treated for a disease or impairment' is

not, by itself, sufficient to render a condition 'severe.'"  Id. (quoting Dixon v. Shalala, 54

F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.

1995)).  "[A] finding of 'not severe' should be made if the medical evidence establishes

only a slight abnormality which would have no more than a minimal effect on an

individual's ability to work."  Taylor, 32 F. Supp. 3d at 265 (citation and quotation marks

omitted).  Plaintiff retains the burden of presenting evidence to establish severity.  See

id.

        Courts have concluded that the failure to find a specific impairment severe at

Step Two is harmless where (1) the ALJ concludes that there is at least one other

severe impairment, (2) the ALJ continues with the sequential evaluation, and (3) the

ALJ's analysis demonstrates that he or she adequately considered the evidence related

to the non-severe impairment.  See Stacy G. v. Berryhill, No. 3:18-CV-143 (CFH), 2018

WL 6250790, at *5 (N.D.N.Y. Nov. 29, 2018) (collecting cases).

        Plaintiff contends that the ALJ's conclusion about her three severe impairments

"failed to mention" her other "major issues[,] includ[ing] IBS-chronic diarrhea/ abdominal

pain, nausea, acid reflux, stomach inflammation, Colitis, Anxiety, Depression, shortness

of breath."  Dkt. No. 21 at 1.  The Commissioner argues that the ALJ's severity

determination is supported by substantial evidence.  See Dkt. No. 19 at 5-7.

        First, insofar as plaintiff lists IBS as one of her major issues, the ALJ did find it to

be a severe impairment.  See T. at 17.  The ALJ also explicitly discussed and cited

records that noted plaintiff's abdominal tenderness and he reiterated her testimony that her primary issue is her "stomach." Id. at 19, 21. The ALJ did not explicitly discuss acid reflux, nausea, inflammation, and shortness of breath. See id. at 17-23. However, the ALJ stated that he "considered [plaintiff's] alleged symptoms and the effects they have purportedly had on her daily functioning." Id. at 19. The records that he cited repeatedly referenced acid reflux, nausea, inflammation, and shortness of breath. See, e.g., id. at 465, 568, 614-15, 625, 636, 641, 650-51, 936, 1097, 1103, 1131, 1159, 1169; see also Lofton v. Colvin, No. 3:13-CV-528 (JBA), 2015 WL 2367692, at *17 (D. Conn. May 13, 2015) (citation omitted) ("[W]hile the ALJ did not specifically mention [the] plaintiff's back pain, he did state that he considered all of plaintiff's pain symptoms before finding that her allegations of pain did not correlate to the objective medical evidence and that she was not fully credible. Therefore, the ALJ did not err by not specifically mentioning [the] plaintiff's joint effusion or back pain in his decision.").

Plaintiff does not argue, nor are there records indicating, that plaintiff's nausea, acid reflux, inflammation, or shortness of breath significantly limited any of her daily activities. See Dkt. No. 21 at 1-2. The ALJ asked plaintiff if there was "anything else that [she though was] important to consider in [her] claim that [they had not] talked about." T. at 45. Plaintiff responded, "No, I mean, my major issue is – it's the stomach that's really been bothering me and preventing me." Id.; see also Otts v. Comm'r of Soc. Sec., 249 F. App'x. 887, 889 (2d Cir. 2007) (summary order) ("While the ALJ might have been more specific in detailing the reasons for concluding that [the plaintiff's] condition did not satisfy a listed impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from the plaintiff, permits us to affirm

this part of the challenged judgment."); <u>Michael D. v. Comm'r of Soc. Sec.</u>, No. 3:22-CV-104 (CFH), 2023 WL 3601718, at *9 (N.D.N.Y. May 23, 2023) ("[The p]laintiff does not identify any records to support that [the] plaintiff experienced those side effects and that the ALJ did not mention [the provider's] notation does not mean he did not consider the side effects."); <u>Hilsdorf v. Comm'r of Soc. Sec.</u>, 724 F. Supp. 2d 330, 352 (E.D.N.Y. 2010) ("[T]he ALJ failed to clarify the particular nature of *any* of [the p]laintiff's daily activities. The ALJ could easily have resolved any such uncertainties by questioning [the p]laintiff further at the hearing.  He did not.  In fact, the ALJ did not ask [the p]laintiff a single question about his subjective symptoms throughout the entire hearing, despite his obligation to do so.").  Thus, there is no evidence that plaintiff's acid reflux, nausea, inflammation, and shortness of breath constitute severe impairments.

As to Colitis, the ALJ did not mention it anywhere in his decision.  <u>See</u> T. at 14-23.  However, the ALJ cited records which discussed plaintiff's "possible Colitis" and "microscopic colitis."  T. at 21 (citing T. at 984, 1084, 1097, 1106, 1117, 1024).  First, a diagnosis does not automatically equate to a severe limitation or a finding of disability. <u>See</u> <u>Tammie S. v. Berryhill</u>, No. 3:18-CV-174 (CFH), 2019 WL 859263, at *9 (N.D.N.Y. Feb. 22, 2019) (citation omitted) ("'Severity' is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe.").  Second, plaintiff does not argue, nor are there records which indicate, that her "microscopic colitis" significantly limited her daily activities in a way that the ALJ did not already consider from plaintiff's IBS.  <u>See</u> Dkt. No. 21 at 1-2.  The record indicates that plaintiff had a colonoscopy in 2019 which revealed a polyp and internal hemorrhoids.  <u>See</u> <u>id.</u> at

1084.  There was also a "[m]edium scar in the rectum mild mucosal edema with possibility of microscopic colitis."  Id.  During follow-up visits, "[m]icroscopic colitis, unspecific microscopic colitis type[]" was "addressed[.]"  Id. at 529, 534, 539, 870, 887, 961, 964.  However, these records do not explain any limitations, symptoms, or findings related to the microscopic colitis.  See id. at 529, 534, 539, 870, 887, 914, 961, 964.  As there is no evidence that plaintiff's microscopic colitis significantly limited her daily activities, the ALJ's conclusions as to plaintiff's severe physical impairments are supported by substantial evidence.

As to her anxiety and depression, the ALJ explicitly discussed both and concluded that they were not severe impairments.  See T. at 17-18.  Plaintiff argues that the ALJ was incorrect in his determination because she has trouble concentrating and going out in public.  See Dkt. No. 21 at 2.  She also explains that the reason she previously denied mental health limitations is because she does not like to talk about it and "felt alone and ashamed."  Id.  Plaintiff states that she makes lists of the things she has to do because she is forgetful.  See id.

Plaintiff's arguments are an attempt to have the court reweigh the evidence. That is not the Court's function.  See Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993).  The ALJ explicitly discussed NP Burlingham's opinion which opined "'moderate' limitations for maintaining attention[]/concentration, maintaining socially appropriate behavior without exhibiting behavior extremes; and functioning in a work setting at a consistent pace[.]"  T. at 17.  The ALJ concluded that the limitations were not supported by plaintiff's allegations and testimony, the other medical opinions, and her examinations.  Id. at 17-18.  The ALJ's conclusion is supported by substantial

evidence.  As explained, plaintiff testified that she was taking depression medication, see T. at 44, and some records indicate major-depressive disorder and a dysphoric mood.  See id. at 389, 273-74, 294, 305-06, 314, 974, 1008-10, 1021, 1029, 1041-42, 1050, 1125; see also supra at 25.  However, plaintiff did not assert depression or anxiety were disabling conditions in her applications for benefits.  See T. at 176, 205. Plaintiff's examinations were mostly normal, and she rarely complained of mental health related limitations.  See T. at 244, 279, 293-94, 345, 354, 366, 381, 391, 481, 553, 569, 593, 601, 621, 630, 637-38, 641, 644-45, 651, 657, 661, 673, 680-81, 776, 908, 980, 985, 992, 1015, 1081, 1127, 1131-32, 1159.  The records that indicate plaintiff had depression, do not indicate that her depression limited her ability to do any daily activities. See Wood v. Colvin, 987 F. Supp. 2d 180, 191 (N.D.N.Y. 2013) ("The record demonstrates that [the plaintiff's] activities of daily living were significantly limited by his physical impairments, but [the plaintiff] never alleged that his depression interfered with specific daily activities. The record therefore provides substantial support for the hearing officer's determination that [the plaintiff's] limitation in activities of daily living due to his depression was mild."); Jones v. Colvin, No. 13-CV-06443 (MAT), 2014 WL 2560593, at *12 (W.D.N.Y. June 6, 2014) ("[The p]laintiff did not claim depression as a disabling impairment when she first applied for benefits, and she testified at the administrative hearing that was not currently being treated for any mental health issues.  Additionally, there is no evidence in the record that [the p]laintiff's depression significantly limited her ability to perform work. [The p]laintiff's statements with respect to her daily activities also belie her contention that her chronic depression limits her ability to work.").

Plaintiff states that she did not previously want to discuss her mental health issues because she did not like talking about it and "felt alone and ashamed." Dkt. No. 21 at 2. An ALJ should consider why a plaintiff may fail to seek treatment. See Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). However, plaintiff's explanation does not appear anywhere in the administrative record. Importantly, the ALJ did not conclude that plaintiff had no mental limitations. See T. at 18. He instead concluded that plaintiff's mental limitations were no more than mild, which is supported by her consistently normal examinations. See supra at 35.

The ALJ also properly relied on opinions which indicated that plaintiff had no work-related mental limitations. See id. at 18; see also id. at 57-58, 87, 823, 830, 859. There are no records indicating that plaintiff had significant limitations to her activities of daily living stemming from her mental health. In her brief to the Court, she states that she makes lists to get things done, but that does not indicate a significant limitation that the ALJ ignored. See Dkt. No. 21 at 2. Thus, the ALJ's severity determination related to plaintiff's mental health is supported by substantial evidence. In any event, any error would be harmless as the ALJ discussed plaintiff's mental impairments at subsequent steps of his decision. See T. at 21; see also Fuimo v. Colvin, 948 F. Supp. 2d at 269-70. It is recommended that plaintiff's motion be denied on this ground.

## 2. Listings Determination

### a.  ALJ's Decision

At step three, the ALJ "considered the listings that most closely relate to [plaintiff's] 'severe' impairments, including sections 3.02 (chronic respiratory disorders), 3.03 (chronic respiratory disorders), 5.06 (inflammatory bowel disease), 5.07 (short bowel syndrome), and 5.08 (weight loss due to any digestive disorder)."  T. at 18.  The ALJ noted that no medical source concluded that plaintiff's conditions met a Listing and that the record did not support a finding that plaintiff's impairments met any of the Listings.  See id.

### b.  Analysis

"Plaintiff has the burden of proof at step three to show that [his or] her impairments meet or medically equal a Listing."  Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009).  "To meet a Listing, [the p]laintiff must show that [his or] her medically determinable impairment satisfies all of the specified criteria in a Listing."  Id. "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify."  Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).  "Additionally, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence."  Andrea K. v. Comm'r of Soc. Sec., No. 1:18-CV-1448 (CFH), 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021) (citations omitted).

"The listing at section 3.02 for chronic pulmonary insufficiency sets out minimum thresholds for forced vital capacity and one-second forced expiratory volume, determined in relationship to a patient's height.  If a patient falls below the listed

threshold, he or she is determined to have chronic pulmonary insufficiency." Rodriguez v. Colvin, No. 15-CV-297 (KPF), 2016 WL 1573464, at *7, n.19 (S.D.N.Y. Apr. 18, 2016) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02)). Similarly, Listing 3.03(A) can be met if pulmonary testing is "less than or equal to the value [set forth in the relevant tables] for [a claimant's] age, gender, and height without shoes[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03(A).

> Pulmonary function testing typically measures FEV1 (forced expiratory volume in one second) and FVC (forced vital capacity), which can establish chronic pulmonary insufficiency under listing 3.02(A) or (B), as well as PCO2 and PO2, which can establish 'chronic impairment of gas exchange due to clinically documented pulmonary disease' under listing 3.02(C)(2) or (3).

Peter F. v. Comm'r of Soc. Sec., No. 5:20-CV-1003 (ML), 2022 WL 1504174, at *7 (N.D.N.Y. May 12, 2022) (citation omitted). "Listing 3.02 may also be met when an individual has experienced exacerbations or complications of their chronic respiratory condition requiring three hospitalizations within a 12-month period and at least 30 days apart." Id. (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02(D)). "[A] claimant can meet the asthma listing requirement in section 3.03(B), which requires that a complainant suffer from asthma attacks at least once every two months or at least six times per year." Rios v. Comm'r of Soc. Sec., No. 12-CV-5102 (NGG), 2015 WL 3455054, at *5 (E.D.N.Y. May 29, 2015).

Plaintiff listed "breathing issues" as one of her medical conditions in her Disability Report. T. at 176. In her Function Report, plaintiff explained that she does not get asthma attacks but will sometimes have a cough when she wakes up at night. See id. at 195. She explained that she was given an inhaler a few years prior when she had mild bronchitis or pneumonia and had trouble breathing. See id. at 195, 523, 544, 554,

570.  Plaintiff was never hospitalized for her asthma.  See id.  There is one pulmonary

function test in the record, and it was "Pre – Normal"  Id. at 754.  She was counseled on

"tobacco use cessation."  Id. at 559, 562.  The state agency medical consultants opined

that plaintiff should avoid even moderate exposure to respiratory irritants, but that she

did not meet a Listing.  See id. at 64-66, 76-78.

There is nothing in the record that would support plaintiff's asthma satisfying

either Listing 3.02 or 3.03.  Thus, the ALJ's determination is supported by substantial

evidence.

Next, to meet Listing 5.06 there must be evidence of

A.  Obstruction of stenotic areas (not adhesions) in the small intestine or
colon with proximal dilatation, confirmed by appropriate medically
acceptable imaging or in surgery, requiring hospitalization for intestinal
decompression or for surgery, and occurring on at least two occasions
at least 60 days apart within a consecutive 6–month period;" or

B.  Two of the following despite continuing treatment as prescribed and
occurring within the same consecutive 6–month period:

1.  Anemia with hemoglobin of less than 10.0 g/dL, present on at least
two evaluations at least 60 days apart; or

2.  Serum albumin of 3.0 g/dL or less, present on at least two
evaluations at least 60 days apart;

3.  Clinically documented tender abdominal mass palpable on physical
examination with abdominal pain or cramping that is not completely
controlled by prescribed narcotic medication, present on at least two
evaluations at least 60 days apart; or

4.  Perineal disease with a draining abscess or fistula, with pain that is
not completely controlled by prescribed narcotic medication, present
on at least two evaluations at least 60 days apart; or

5.  Involuntary weight loss of at least 10 percent from baseline, as
computed in pounds, kilograms, or BMI, present on at least two
evaluations at least 60 days apart; or

      6.  Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R. pt. 404, subpt. P, app. 1 § 5.06(C)(1). To meet Listing 5.07, plaintiff must have "[s]hort bowel syndrome (SBS), due to surgical resection of more than one-half of the small intestine, with dependence on daily parenteral nutrition via a central venous catheter (see 5.00F)." Id. § 5.07. To meet Listing 5.08 plaintiff must establish "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6–month period." Id. § 5.08.

As the Commissioner explains in her brief, plaintiff was never hospitalized for her IBS, her hemoglobin and albumin levels were normal, she did not have an abdominal mass, she never received a nutritional catheter or daily enteral nutrition, and her body mass index did not go below 20. See Dkt. No. 19 at 9 (citing T. at 439, 501, 522, 553, 590-92, 601, 604-05, 615, 621, 626-27, 630, 634, 638, 641, 644-45, 752, 760-61, 908, 915, 936, 949, 956-57, 1009, 1025, 1035, 1038-39, 1042, 1085). As to plaintiff's weight, at various points during the relevant period, she weighed 111, 114, 121, and 129 pounds. See T. at 439, 481, 637, 650. A medical record from August 2018 notes that plaintiff "has lost about 10 pounds in the last 1 year. 2 months ago she gave birth to a baby girl." Id. at 636. The relevant period for plaintiff's claims did not begin until April 2018, and she was pregnant from December 2017 to July 2018. See id. at 22, 456, 481. She "lost weight since deliver, states lost weight quick since delivery." Id. at 643. On July 24, 2020, plaintiff testified that she weighed 119 pounds and that she had "gained like five pounds since the last – you know, like four months, so. I was at 111 for a long while and -- . . . 109 or something." Id. at 40.

40

There were no "two evaluations at least 60 days apart" in which plaintiff lost ten or more pounds.  See id. at 439, 592, 667, 1042, 1080, 1084, 1097.  Even if plaintiff had lost enough weight to meet one part of Listing 5.06, there is no evidence of perineal disease, lower hemoglobin or albumin levels, an abdominal mass, or supplemental daily enteral nutrition.  Thus, her condition does not satisfy Listing 5.06.  See Rockwood, 614 F. Supp. 2d at 272.  Based on the foregoing, the ALJ's Listings determination is supported by substantial evidence and remand is not warranted on this ground.

### 3.  RFC Determination[6]

### a.  Bathroom Breaks

### i.  ALJ's Decision

The ALJ first acknowledged plaintiff's subjective complaints.  See T. at 19.  He reiterated plaintiff's hearing testimony that she "had had diarrhea for two years. She stated that she has to be near a bathroom and has had to go to the bathroom in the car She also stated that her doctors cannot 'figure out what is wrong[.]'"  Id.  He noted that plaintiff "had two colonoscopies that found polyps and she has 'been on some different medications.'  She is also reportedly 'moderately lactose intolerant' and has lost some weight due to food not digesting, but has 'started gaining it back a little[.]'"  Id.  ALJ Romeo reiterated plaintiff's testimony "that she has to go to the bathroom 'about six times' a day," "that 'everything goes right through' her and she has been buying Lactaid milk."  Id.  "She testified that she took calcium and vitamin D supplements, as well as

---

[6] Plaintiff does not challenge the ALJ's RFC determination insofar as it limits her to light work.  See Dkt. No. 21 at 1-2.  She challenges only his conclusions as to her bathroom and mental limitations.  See id. at 1-2.

medication to treat heartburn, diarrhea, allergies, and an inner-ear infection.  She also stated that her 'major issue is [her] stomach[.]'" Id.

The ALJ "considered [plaintiff's] alleged symptoms and the effects they have purportedly had on her daily functioning.  However, the record as a whole does not support limitations beyond those provided for within the above found residual functional capacity." T. at 19.  The ALJ concluded that plaintiff's "allegations have been found to affect her ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence of record."  Id.

In reviewing the medical evidence, the ALJ relied on medical opinions from state agency medical consultants I. Sinha, M.D., and G. Wang, M.D., consultative examiner Elke Lorsensen, M.D., and ANP Chambrone—all of whom indicated that plaintiff had no bathroom restrictions.  See T. at 20 (citing T. at 52-93, 750-56, 823, 830); see also T. at 859, 970.  In discussing John Thomas, M.D.'s opinion, the ALJ noted that plaintiff's "clinical medical exams, while largely normal, have at times noted some abdominal tenderness[.]" Id. at 21 (citing T. at 553, 601, 621, 630, 641, 645, 961, 1103, 1127, 1159).  The ALJ explained that his determined "provisions for bathroom access are based upon [plaintiff's] sworn testimony and medical reports regarding the nature of her gastrointestinal symptoms and the frequency of her bathroom use[.]"  Id. (citing T. at 465-66, 552, 568, 614, 620, 625, 636, 774, 788, 914, 948, 1024, 1034, 1063, 1084, 1097, 1106, 1117, 1126, 1131, 1169.

In NP Burlingham's 2019 opinion, he wrote that plaintiff would be "unable to perform any of her job functions due to abdominal pain, chronic diarrhea, [and] nausea. Having [] 9 bowel movements daily, diarrhea stools, accompanied by nausea, severe

abdominal cramping." T. at 851. Additionally, "flare ups of diarrhea, cramping pain + nausea will prevent [plaintiff] from focusing and completing job duties." Id. at 852. NP Burlingham indicated that plaintiff would have a flare up one to two times a week which would last for eight hours or two to three days. See id. The ALJ concluded, "Ms. Broniszewski-Burlingham's statement about [plaintiff's] 'flare-ups' and 'related incapacity' are not persuasive because they are not consistent with or supported by [plaintiff's] own statements about her condition and activities[.]" Id. at 21.

The vocational expert ("VE") testified that plaintiff could perform her past work as a food service worker if she required fifteen-minute morning and afternoon breaks, a thirty-minute lunch break, and two additional six-minute bathroom breaks. See T. at 47-48. The VE explained that employer tolerance for being off task is fifteen percent of a workday and if plaintiff had to be off task more than that because of chronic diarrhea, there would be no work she could perform. See id. at 48.

### ii.  Analysis

Plaintiff argues that she could not work with normal scheduled breaks and two additional unscheduled breaks because her need to use the restroom is unpredictable and she would have to walk off of the job when she needed to use the bathroom. See Dkt. No. 21 at 2. The Commissioner argues that the ALJ's RFC determination related to bathroom use is supported by substantial evidence given plaintiff's testimony, the medical records, and medical opinions. See Dkt. No. 19 at 12.

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology], including pain and other limitations which could interfere with work activities on a regular and

continuing basis." <u>Samantha S. v. Comm'r of Soc. Sec.</u>, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (alteration in original) (citation omitted). "The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." <u>Nedzad O. v. Comm'r of Soc. Sec.</u>, 577 F. Supp. 3d 37, 46 (N.D.N.Y. Dec. 21, 2021) (citation omitted). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." <u>Tammy Lynn B. v. Comm'r of Soc. Sec.</u>, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (citation omitted).

"[T]he Commissioner must consider all medical opinions and 'evaluate the[ir] persuasiveness' based on their supportability and consistency, the author's relationship with the claimant and specialization, and 'other factors.'" <u>Cassandra G. v. Comm'r of Soc. Sec.</u>, 626 F. Supp. 3d 553, 564 (N.D.N.Y. 2022) (quoting 20 C.F.R. § 416.920c(a)-(c)); <u>see also</u> 20 C.F.R. § 404.1520c(a)-(c). "Although the ALJ is not required to assign a specific 'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" <u>Id.</u> (quoting § 416.920c(a) and (b)(1)); <u>see also</u> 20 C.F.R. § 404.1520c(a), (b)(1). The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinions or prior administrative medical finding(s) will be."
Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more
consistent a medical opinion(s) or prior administrative medical finding(s) is with the
evidence from other medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id.
§§ 404.1520c(c)(2), 416.920c(c)(2).

"Courts frequently remand an ALJ's decision when it ignores or mischaracterizes
medical evidence or cherry-picks evidence that supports his RFC determination while
ignoring other evidence to the contrary."  Jackson v. Kijakazi, 588 F. Supp. 3d 558, 585
(S.D.N.Y. 2022) (citation omitted).  Additionally, "[a] conclusory analysis of the[ relevant]
factors 'precludes the Court from undertaking meaningful review' of the ALJ's decision.
Indeed, '[c]ourts in this Circuit have remanded when the ALJ failed to address either
supportability or consistency.'"  Annjeanette B. v. Kijakazi, No. 3:22-CV-198 (ATB),
2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) (citations omitted).

The undersigned finds no error in the ALJ's credibility determination.  The ALJ
reviewed plaintiff's reported medical conditions, symptoms, and limitations and
concluded that her "allegations have been found to affect her ability to work only to the
extent they can reasonably be accepted as consistent with the objective medical and
other evidence of record."  T. at 19.  The ALJ did not ignore any records or
mischaracterize plaintiff's statements.  A review of his decision and the record shows
that the ALJ's reasons are supported by substantial evidence because, as explained
below, the records indicate that plaintiff is not as limited as she testified.  See Selian v.

Astrue, 708 F.3d 409, 420 (2d Cir. 2013) (per curiam) ("[A]n ALJ's credibility determination is generally entitled to deference on appeal.").

The undersigned also finds no legal error in the ALJ's discussion of the medical opinions.  ALJ Romeo reviewed the medical opinions in the record and discussed their consistency or inconsistency with each other, whether they were supported by any substantive explanations, and their consistency with the medical evidence.  T. at 20-21.  The ALJ cited a plethora of records in support of each of his statements, none of which appear to be cherry picked or mischaracterized.  See id. at 20-21.  The ALJ's statements are not conclusory.  Thus, he did not commit legal error in his consideration of the medical opinions as required by 20 C.F.R. §§ 404.1520c and 416.920c.

As as to whether the decision is supported by substantial evidence, no medical opinion indicated that plaintiff would need a specific number of, or unlimited, bathroom breaks.  See T. at 52-93, 750-56, 823, 830, 850-53, 859, 970.  Plaintiff testified that she used the restroom "at least six times" a day and "it's really bad in the morning.  It's as soon as [she] wake[s] up [she has] to the run to the bathroom and at nighttime it gets really bad, too[.]"  Id. at 40.  Throughout the medical records, plaintiff often complained that she had a bowel movement three to five times a day.  See id. at 465-66, 614, 625, 636, 774, 788, 914, 948, 1024, 1034, 1063, 1084, 1097, 1106, 1117, 1169.  In August 2019, plaintiff had "ongoing diarrhea, up to 6-8 stools a day, hard to maintain weight."  Id. at 568; see also id. at 552, 1126, 1131.  Nowhere in the record did plaintiff state that she was unable to complete tasks or focus because of her need to use the restroom.

The ALJ explicitly cited the records indicating that plaintiff had only three to four bowel movements a day, and those stating she had six to eight bowel movements a

day.  See T. at 21.  Utilizing those records and plaintiff's testimony, he concluded that her need to use the restroom could be accommodated by "ready access to a restroom" and five breaks through the day: the 15-minute morning and afternoon breaks, the 30-minute lunch period, and two additional six-minute bathroom breaks[.]"  Id. at 17-18.  As no medical opinion indicated that plaintiff would require more breaks throughout the day, majority of the opinions indicated that plaintiff was able to work despite her stomach issues, and plaintiff did not indicate anywhere in the record that she would not be able to complete a normal workday because of her need to use the restroom, the undersigned finds the ALJ's conclusion to be supported by substantial evidence.

This is not a situation where the ALJ failed to discuss the need for ready access to a bathroom and additional breaks or ignored medical opinions opining as such.  See Dunsford v. Comm'r of Soc. Sec., No. 5:21-CV-1167 (LEK), 2023 WL 2242083, at *8 (N.D.N.Y. Feb. 27, 2023) (remanding because "despite finding [an] opinion that unscheduled bathroom breaks were needed, the ALJ's RFC omits the allowance for unscheduled bathroom breaks, and merely provides for [the p]laintiff's 'access' to a bathroom."); Brian D. v. Comm'r of Soc. Sec., No. 3:21-CV-1368 (CFH), 2023 WL 1765429, at *8 (N.D.N.Y. Feb. 3, 2023) ("[T]he ALJ concluded that plaintiff 'should have restrooms that are readily accessible and available to' him but did not explain how often plaintiff may need to take breaks to use the restroom and whether those breaks would fall within the normal work schedule.  This is despite the medical opinions concluding that plaintiff would need to take a lot of breaks and would struggle to maintain a schedule.").  Rather, the ALJ reviewed plaintiff's testimony, complaints, and medical records concerning her need to use the restroom multiple times a day.  See T. at 19-21.

He then accommodated this need by requiring that plaintiff have ready access to the bathroom and that she have additional unscheduled breaks throughout the day.  See id. at 18-19.

To be sure, the VE testified that if, due to chronic issues of chronic diarrhea, plaintiff would be off task more than fifteen percent of a workday, no jobs would be available.  See T. at 48.  However, there is no evidence in the record, nor does plaintiff argue, that her need to use the bathroom would keep her off task for so long that she could not maintain employment.  See Dkt. No. 21 at 1-2.  NP Burlingham, in his 2019 opinion, wrote that plaintiff's "flares ups of diarrhea, cramping pain + nausea" would occurred one to two times per week, and last eight hours or two to three days.  T. at 852.  However, the ALJ explicitly rejected NP Burlingham's conclusion because plaintiff's reports and testimony did not indicate that when she was having diarrhea, pain, and/or nausea, she was unable to focus and complete tasks for eight hours or days at a time.  See id. at 21.  As explained, this conclusion is supported by substantial evidence from plaintiff's own reports and the medical records and opinions.  See Hamilton v. Colvin, 8 F. Supp. 3d 232, 237-38 (N.D.N.Y. 2013) (citation omitted) (alteration in original) ("[T]his Court must afford the Commissioner's determination considerable deference, and may not substitute 'its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'").  Thus, it is recommended that plaintiff's motion be denied on this ground.

**b.  Mental Health Limitations**

48

As part of his RFC determination, the ALJ repeated his analysis from step two concerning plaintiff's mental health limitations.  See T. at 17-18, 21; see supra at 31-32.

First, as explained, the ALJ did not conclude that plaintiff had no mental health limitations, only that plaintiff had "no more than 'mild' limitations" or no "significant work-related limitations."  T. at 18, 21; see supra at 36.  In so concluding, the ALJ relied on medical opinions and plaintiff's "mental status exams" and "reported activities and abilities."  Id. at 21.

Plaintiff does not argue that the ALJ erred in considering her daily activities, the medical opinions, or the treatment records.  See Dkt. No. 21 at 1-2.  She argues only that has trouble concentrating, gets nervous leaving the house, and has to make lists to remember things because she always has so much to do.  See id.  The ALJ explicitly discussed plaintiff's complaints of difficulty concentrating and remembering things due to stress and schedule changes.  See T. at 17-18, 21.  Substantial evidence supports the ALJ's conclusion that plaintiff did not have significant work-related limitations because even when she exhibited signs of depression, she denied impacts on her concentration, and she did not indicate that she was unable to complete tasks because of her mental health.  See id. at 21; see supra at 25.  Plaintiff's disagreement with the ALJ's conclusion does not warrant remand.  See Tyler H. v. Comm'r of Soc. Sec., No. 5:21-CV-01216 (GTS/TWD), 2023 WL 2838051, at *9 (N.D.N.Y. Jan. 30, 2023) (citation omitted) ("Under the substantial evidence standard of review, it is not enough for [the p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Substantial evidence 'means—and means only—such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'"), report and recommendation adopted, 2023 WL 2643503 (N.D.N.Y. Mar. 27, 2023).  Thus, remand is not warranted on this ground.

### 4.  Step-Five Determination

At step five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform."  McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (alteration in original) (quoting Brault, 683 F.3d at 445).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert [("VE")]."  Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved[.]"  See Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (summary order) (citations omitted).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper.  See id. at 276-77.  Here, the VE's hearing testimony included a response to a hypothetical question based on plaintiff's RFC.  See T. at 47-48.  Because the undersigned has determined that the ALJ's RFC determination is supported by substantial evidence, it also concludes that the ALJ's hypothetical was proper, and the step-five determination is supported by substantial evidence.  Thus, it is recommended that plaintiff's motion be denied on this ground

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**; and it is further

**RECOMMENDED**, that plaintiff's motion, Dkt. No. 21, be **DENIED**; and it is further

**RECOMMENDED**, that defendant's motion, Dkt. No. 19, be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[7]

Date:    August 21, 2023
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).